UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SAMUEL KIRIAZIS, | ) Case No. 1:05CV2227 |
| | ) |
| Petitioner, | ) JUDGE KATHLEEN O'MALLEY |
| | ) Magistrate Judge George J. Limbert |
| vs. | ) |
| | ) |
| VINCENT POLITO, | ) INTERIM REPORT AND |
| | ) RECOMMENDATION OF |
| | ) MAGISTRATE JUDGE |
| Respondent. | ) |

On September 21, 2005, Samuel Kiriazis, (hereinafter "Petitioner"), filed his petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.  *See* Electronic Case Filing (hereinafter "ECF") Dkt. #1 ("Petition").  On February 7, 2006, Vincent Polito (hereinafter "Respondent") filed an answer/return of writ.  *See* ECF Dkt. #7 ("Return of Writ").  Petitioner filed his traverse on April 12, 2006.  *See* ECF Dkt. #10 ("Traverse").

In his underlying criminal case Petitioner was convicted of operating a brothel and possession of criminal tools and placed on six months community control sanctions, which were eventually terminated on October 25, 2005.  Petitioner's community control sanctions terminated a month *after* he filed his Petition.  *See* Return of Writ, Ex. 1.

In his Return of Writ, Respondent initially asks the Court to dismiss the Petition on jurisdictional grounds because Petitioner is allegedly not *in custody*.  If the Court rejects his request for dismissal, Respondent submits that the Petition should be denied on its merits because the decision of the state appellate court, rejecting Petitioner's direct appeal of his

-1-

conviction, is not contrary to or an unreasonable application of clearly established federal law.

Petitioner argues that he is *in custody* for purposes of this case because he was still on "community control" when he filed his Petition. Petitioner also provides the Court with briefing on the merits of his Petition.

Also, in his Return of Writ, Respondent notes that he did not incur the expense of ordering a copy of the transcript of Petitioner's underlying state criminal case for filing with this Court. Nevertheless, Respondent still cites to applicable portions of the transcript within his brief. Respondent represents that, if the Court ultimately disagrees with his position that Petitioner is not *in custody*, he will provide a copy of the transcript for this Court.[1]

## I. FACTUAL BACKGROUND

The Eighth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 2403 (1999). As set forth by the Eighth District Court of Appeals, the facts are:

> On October 9, 2002, Detective John Graves ("Graves"), a police officer in the vice unit of the Cleveland police department, received a complaint that a male named "Sam" was running an escort service located at 3237 West 25th Street ("West 25th") in Cleveland. Graves obtained the phone number where "Sam" could be reached and spoke to a male who identified himself as "Sam." "Sam" was later identified as appellant. During the telephone call, Graves testified that appellant read him a description of the females he had available, informed Graves that the females charge $150 per hour for "full service," and set up a meeting that night at

---

[1] Counsel for Respondent also represented that he has spoken with counsel for Petitioner who has indicated that he has no objection to filing the transcript at a later date.

West 25th. Graves also testified that "full service" meant oral sex or sexual intercourse.

For the purposes of security, Graves testified that Detective Ted Thomas ("Thomas"), also a police officer in the vice unit of the Cleveland police department and posing as a "john," went to West 25th in his place. Thomas testified that when he arrived at West 25th, he met appellant and a female. The female took Thomas into a bedroom, asked him to show her that he had money, which he did, and asked him to take off his pants. Thomas testified that the female became nervous thinking that he was a cop and began walking in and out of the bedroom. Finally, the female told Thomas to leave, which he did, and on his way out, appellant informed him that the female thought he was a cop. No charges were filed or arrests were made that night. It was later determined that appellant was the landlord of the West 25th building.

A week later, on October 16, 2002, Detective Neil Hutchinson ("Hutchinson"), also a police officer in the vice unit of the Cleveland police department, made a controlled call to appellant at the same phone number Graves called on October 9, 2002 to set up a meeting with a female. Graves was also present for the call. Appellant asked Hutchinson what type of girl he was interested in, whether he had a particular interest in sexual activity, that the females charge $150.00 per hour for "full service," and that a female would call him back to set up a meeting. Hutchinson also testified that "full service" meant oral sex or sexual intercourse. As described by appellant, Jennine Tomazic ("Tomazic") called Hutchinson and set the meeting that night at 2092 West 95th Street ("West 95th"). When Hutchinson arrived at West 95th, he was led by Tomazic into a bedroom, Tomazic asked him for the money up front, and Tomazic called appellant on her cell phone at the same number used by Graves and Hutchinson. Hutchinson testified that Tomazic called appellant "Sam" and told him that Hutchinson was okay and not a cop. At that point, Hutchinson testified that he gave the signal to his vice unit and charged Tomazic with soliciting prostitution. Tomazic told Hutchinson that of the $150 charged by her for sexual activities, she received $100 and would pay appellant $50 for clients arranged by him.

Hutchinson also charged Kurt Lenz ("Lenz"), a male who exited from an adjacent bedroom at West 95th, with drug

-3-

>possession when a crack pipe was discovered on Lenz or within his immediate vicinity. Lenz also told Hutchinson that he came to West 95th to get high and receive oral sex from a female. In addition, Hutchinson charged Katherine Martin ("Martin") with prostitution, who was stopped as she was leaving West 95th, and admitted that she was a prostitute.
>
>Hutchinson then went to West 25th where he placed appellant under arrest for promoting prostitution. While at West 25th, the police discovered and took as evidence three notebooks and a cell phone. One notebook contained at least 45 female names, their body measurements, their phone numbers, their sexual preferences, and their availability. A second notebook was an appointment book, which contained an appointment for "Neil" (Hutchinson's first name) with his phone number and $150 next to his name. The third notebook contained the first names of customers, their telephone numbers, the amount charged and paid, and comments received about their meeting with certain females. In addition to the notebooks, the police confiscated appellant's cell phone, which still had Hutchinson's phone number in its call history, and it was determined by calling the cell phone number that it was the identical number Graves, Hutchinson, and Tomazic called. With these notebooks and cell phone, the police advised appellant that he was also being arrested for possession of criminal tools.
>
>Further, appellant told police after he was read his Miranda rights, that he had been running the business for a few months, and was simply trying to make some money. Appellant also told police that he knew the females were engaging in sexual activities and that he received $50 each time he set up a meeting for the females.

*State v. Kiriazis*, 2004 WL 231478, *1-2 (Ohio Ct. App. Feb. 5, 2004). Petitioner's direct appeal to the Ohio Supreme Court was not accepted for review.  *See State v. Kiriazis*, 810 N.E.2d 968 (Table) (2004).

## II.     CUSTODY

The first and only issue the undersigned will address in this interim report and recommendation is whether Petitioner is *in custody* for purposes of this habeas corpus case.  It is

undisputed that Petitioner was convicted of operating a brothel and possession of criminal tools and placed on six months community control sanctions, which were eventually terminated on October 25, 2005. Petitioner filed this habeas corpus case on September 21, 2005. Therefore, Petitioner's community control sanctions terminated a month *after* he filed his Petition. *See* Return of Writ, Ex. 1. Because Petitioner's community control sanctions were ongoing when he filed his Petition, the undersigned finds that Petitioner is *in custody* for purposes of this habeas corpus case. Because Petitioner is *in custody*, the undersigned also finds that this Court has jurisdiction over this habeas corpus case. Therefore, the undersigned recommends that Respondent's request to dismiss this case on jurisdictional grounds be DENIED.

To invoke habeas corpus review by a federal court, the habeas corpus petition must be "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has repeatedly and unequivocally stated that "[t]he federal habeas corpus statute requires that the applicant must be 'in custody' when the application for habeas corpus is filed." *Cafafas v. LaVallee,* 391 U.S. 234, 238 (1968); *Maleng v. Cook,* 490 U.S. 488, 490-91 (1989) (a habeas petitioner is not "in custody" and hence cannot obtain habeas relief where his sentence has fully expired prior to filing his petition). Additionally, "as long as jurisdiction properly attached in the district court, 'it is not defeated by the release of the petitioner prior to completion of proceedings on such application.'" *Eusch v. Lee*, 690 F. Supp. 773, 774 (E.D. Wis. 1988) (quoting *Cafafas*, 391 U.S. at 238). *See also Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1989) (same).

Thus, the *in-custody* jurisdictional requirement is determined as of the date the petition is

filed in the district court, and jurisdiction is not affected if the sanction expires subsequent to the filing of the petition. *See Carafas*, 391 U.S. at 238-40. When Petitioner filed this habeas corpus case his community control sanctions had not expired. The question becomes whether community control sanctions under Ohio law constitute *custody* for purposes of federal habeas corpus.

The Undersigned notes that the *in-custody* requirement has been given an expansive interpretation. *See U. S. ex rel. Wojtycha v. Hopkins*, 517 F.2d 420, 423 (3rd Cir. 1975). Moreover, the term "custody" is not limited solely to physical confinement. *See Sanders v. Freeman*, 221 F.3d 846, 850-51 (6th Cir.2000). For instance, persons on parole, probation or bail may be *in custody* for purposes of §§ 2241 and 2254. *See, e.g., Jones v. Cunningham,* 371 U.S. 236, 240-41 (1963) (parole); *Hensley v. Municipal Court,* 411 U.S. 345, 349 (1973) (bail); *McVeigh v. Smith,* 872 F.2d 725, 727 (6th Cir.1989) (probation). *See also Timson v. Ammer*, 1993 WL 150002, *1, 993 F.2d 1547 (Table) (6th Cir. May 7, 1993) ("Actual physical custody is not required; the fact that [petitioner] was on probation at the time of filing is sufficient for jurisdictional purposes.") (citing *Sevier v. Turner*, 742 F.2d 262, 268-69 (6th Cir.1984)); *Overton v. Rieger*, 311 F. Supp. 1035, 1037 (S.D.N.Y. 1970) (finding that probationary restrictions and the threat of incarceration for violation thereof suffice to constitute custody for purposes of federal habeas corpus).

The Undersigned finds that community control sanctions under Ohio law suffice to constitute custody for purposes of federal habeas corpus because community control sanctions operate like probationary restrictions. In *State v. Wolfson*, 2004 WL 1178724, *2 (Ohio Ct. App. May 25, 2004), the Ohio Court of Appeals explained that:

-6-

> Community control sanctions essentially replace the concept of "probation" in Ohio's criminal justice system. See generally Griffin & Katz, Ohio Felony Sentencing Law (2003 ed.) 682-683, §§ 6:1-6:2. Although probation and community control sanctions are similar in their operational effect, probation was an "expression of leniency in place of a deserved prison sentence" while community control sanctions are imposed as "the sentence that is deserved and which the court has deemed to be most reasonably calculated to protect the public from future crime." *Id.* at § 6:1. Most of the case law examining probation revocations is equally applicable to the revocation of community control sanctions. See, e.g., *State v. Weaver,* 141 Ohio App.3d 512, *2001-Ohio-3216,* 751 N.E.2d 1096 (applying due process requirements of probation revocation to revocation of community control sanctions);

*Id*.

The Undersigned also finds that Petitioner meets the jurisdictional requirement of being *in custody* for purposes of this habeas corpus review. On September 21, 2005, Petitioner filed his Petition for habeas corpus relief during the pendency of his community control sanctions. Petitioner's community control sanctions terminated on October 25, 2005. Thus, since Petitioner filed his Petition *before* his community control sanctions terminated, he has met the *in custody* jurisdictional requirement.

The Undersigned lastly finds that Petitioner's habeas corpus case has not been rendered moot even though Petitioner's custody, i.e. community control sanctions, ended on October 25, 2005, before the disposition of his habeas corpus case. Petitioner's application for habeas corpus relief was filed while Petitioner was *in custody*, and possible adverse collateral consequences could flow from Petitioner's conviction. *See e.g., Oyler v. Allenbrand*, 23 F.3d 292, 294 (10th Cir. 1994).

For these reasons, the Undersigned recommends that Respondent's request to dismiss this

case on jurisdictional grounds be DENIED..

### III.    CONCLUSION AND RECOMMENDATION

For the above reasons, the Undersigned recommends that Respondent's request to dismiss this case on jurisdictional grounds be DENIED. Because the Undersigned recommends that Respondent's request for dismissal on jurisdictional grounds be rejected, the Undersigned also recommends that Respondent be ORDERED to file the complete transcript of Petitioner's underlying state criminal proceedings involving (1) his conviction of operating a brothel and possession of criminal tools and (2) any direct or collateral review of his conviction. Lastly, the Undersigned recommends that Petitioner be given 60 days from the date Respondent files the transcript in which to file a supplemental traverse for this Court's consideration. It is fundamental that the Court can only undertake an analysis of the merits of this habeas corpus case once the transcript has been filed.

Date: April 24, 2006                    */s/George J. Limbert*
                                                                         George J. Limbert
                                                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).