UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SAMUEL KIRIAZIS,** | : | Case No. 1:05CV2227 |
| | : | |
| **Petitioner,** | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| v. | : | |
| | : | |
| **VINCENT POLITO,** | : | <u>ORDER</u> |
| | : | |
| **Respondent.** | : | |

On September 21, 2005 Petitioner, Samuel Kiriazis ("Kiriazis or Petitioner"), filed a petition for a *writ of habeas corpus* (Doc. 1) pursuant to 28 U.S.C. § 2254. On the same day, the Court referred (Doc. 4) this case to Magistrate Judge George J. Limbert, ultimately for preparation of a Report and Recommendation ("R&R") regarding Kiriazis' petition. On February 7, 2006, Respondent, Vincent Polito ("Respondent"), filed an Answer/Return of Writ ("Answer") (Doc. 7). On April 12, 2006, Kiriazis filed a Traverse (Doc. 10). On April 24, 2006, Magistrate Judge Limbert issued an Interim Report & Recommendation ("Interim R&R") recommending that the Court deny the Respondent's request to dismiss the case on jurisdictional grounds, and recommending that the Court order the Respondent to file a complete transcript of the underlying proceedings in the Cuyahoga County Court of Common Pleas. (Doc. 11.) The Court adopted the Interim R&R on June 7, 2007, denying the Respondent's request for dismissal and ordering the Respondent to file a complete transcript of the underlying proceedings. (Doc. 12.) The Respondent filed the required transcript on September 6, 2006. (Doc. 13.) On November 20, 2006, Magistrate Judge Limbert issued his R&R (Doc. 15) recommending that this Court deny Kiriazis' petition and dismiss this case. On January 30, 2007, Kiriazis filed objections to that R&R (Doc. 17).

The Court agrees with the magistrate judge's merits-based conclusions that Kiriazis has not

demonstrated that the state appellate court's decision was:  (1) contrary to, or involved the unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) based on an unreasonable determination of the facts in light of the evidence presented.  As outlined in greater detail below, the Court concludes that Kiriazis' petition is without merit.  Accordingly, Kiriazis' petition must be **DENIED** and his case **DISMISSED.**

**I.    BACKGROUND**

The Interim R&R accurately sets forth this case's factual and procedural background.  (Doc. 11 at pp. 2-4.)   In the interest of efficiency, therefore, the Court adopts the Interim R&R's articulation of this case's factual and procedural background, and does not restate them herein.  To the extent necessary, if any, the Court will elaborate on factual and/or procedural issues worthy of additional consideration.

Kiriazis' petition presents a single merits-based argument for *habeas* relief:

> Mr. Kiriazis was denied his right to due process when the trial court found him guilty of offenses for which he was indicted, as revealed by the State's bill of particulars, when the offense conduct that was the subject of the indictment was not supported by sufficient evidence.

(Doc. 1 at p. 4.) The grand jury indicted Kiriazis with one count of operating a brothel under O.R.C. 2907.22(A)(1) and one count of possessing criminal tools under O.R.C. 2923.24.  (Doc. 18, Indictment.[1])  The bill of particulars subsequently filed by the government specifies the location of the alleged brothel, indicating that Kiriazis operated a brothel and possessed criminal tools at a

---

[1] Count One of the indictment reads as follows:

> COUNT ONE – PROMOTING PROSTITUTION R.C. 2907.22
> DEFENDANT: STATE OF OHIO vs. SAMUEL KIRIAZIS
>     The Grand Jurors, on their oaths, further find that the Defendant(s) unlawfully knowingly did establish, maintain, operate, manage, supervise, control, or have an interest in a brothel.

certain location on West 95th Street in Cleveland. (Doc. 18, Bill of Particulars.) In his petition, Kiriazis asserts that, although the evidence presented at trial may have been sufficient to sustain a conviction for operating a brothel and possessing criminal tools at a certain location on West 25th Street in Cleveland, the evidence was insufficient to sustain a conviction for the same crimes at the West 95th location identified in the bill of particulars. (Doc. 1.) Kiriazis contends, accordingly, that there was insufficient evidence presented at his trial to support a conviction for the crime with which he actually was charged.

## II.  LAW AND STANDARD OF REVIEW

Because Kiriazis filed his *habeas* petition on September 21, 2005, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's review of that petition. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998); *see also Woodford v. Garceau*, 538 U.S. 202, 210 (2003).[2] The AEDP outlines the standard by which federal courts review the merits of properly-asserted grounds for relief.[3] In pertinent part, the AEDPA provides:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2]  The AEDPA applies to petitions filed <u>after</u> the Act's <u>April 26, 1996</u> effective date. *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).

[3]  The AEDPA also includes procedural hurdles which are inapplicable to this case. *See* 28 U.S.C. § 2244(d)(1).

>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

After passage of the AEDPA, the various circuits interpreted the standard to be applied differently under these provisions.[4] In response to these nationwide variations, the Supreme Court directly addressed the meaning of the AEDPA's statutory language and, as the Sixth Circuit has confirmed, announced that the statute "places a new <u>constraint</u> on the power of a federal *habeas* court to grant a state prisoner's application for a *writ of habeas corpus* with respect to claims adjudicated on the merits in state court." *Campbell v. Coyle*, 260 F.3d 531, 539 (6th Cir. 2001) (*quoting Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (emphasis added).

In *Williams v. Taylor*, 529 U.S. 362, 412 (2000), the Supreme Court clarified §2254(d)(1), stating that:

>> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion <u>opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts</u>. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but <u>unreasonably applies</u> that principle to the facts of the prisoner's case.

*Williams,* 529 U.S. at 412-413 (emphasis added). The Court also offered additional guidance regarding the meaning of "unreasonable application." A state court's decision can engender an "unreasonable application" of Supreme Court precedent if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context."

---

[4] *Compare Green v. French***,** 143 F.3d 865 (4th Cir.1998), *and Nevers v. Killinger*, 169 F.3d 352, 358 (6th Cir. 1999)*, with Long v. Humphrey*, 184 F.3d 758 (8th Cir.1999) *and Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir. 1999).

*Id*. at 409. "[A] federal *habeas* court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was <u>objectively unreasonable</u>." *Id*. (Emphasis added). As the Supreme Court recently advised, "[t]he question under [the] AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold. " *Schriro v. Landrigan*, – U.S. –, 127 S.Ct. 1933, 1937 (2007) *citing Williams,* 529 U.S. at 410.

Additionally, in reviewing *habeas* petitions, federal courts are obliged to "accept as valid a state court's interpretation of state law and rules of practice of that state." *Vroman v. Brigano,* 346 F.3d 598, 604 (6th Cir. 2003); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). Similarly, they are not free to ignore the pronouncement of a state appellate court on matters of state law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000). The standard of review applied to the merits of a petition for a writ of *habeas corpus*, therefore, is a stringent one.

As to the "unreasonable determination of the facts" clause in Section 2254(d)(2), the Supreme Court applied that section in *Wiggins v. Smith*, 539 U.S. 510 (2003). In *Wiggins*, the Court noted that a "clear factual error," such as making factual findings regarding the contents of social services records contrary to "clear and convincing evidence" presented by the defendant, constitutes an "unreasonable determination of the facts in light of the evidence presented." *Id.* at 528-529. In other words, a state court's determination of facts is unreasonable if its findings conflict with clear and convincing evidence to the contrary. This analysis mirrors the "presumption of correctness" afforded factual determinations made by a state court which can only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Mitchell v. Mason*, 325 F.3d 732, 737-738

5

(6th Cir. 2003).

### III. THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The magistrate judge determined that the indictment satisfied all constitutional requirements and was legally sufficient under applicable Sixth Circuit law.  (Doc. 15 at p. 4.)  The R&R notes that courts use a common sense approach to determining the sufficiency of an indictment and that "a certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not per se impermissible or necessarily fatal to a prosecution."  *Id.* (citing *Allen v. United States*, 867 F.2d 969, 971 (6th Cir. 1989); *United States v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000); *State v. Sellers*, 17 Ohio St. 3d 169, 171 (Ohio 1985); *State v. Hensley*, 59 Ohio St. 3d 136 (Ohio 1991).  The magistrate judge concluded in the R&R that the state court applied the pertinent federal law related to the sufficiency of an indictment, and did so in an objectively reasonable manner.

After summarizing the evidence in support of Kiriazis' conviction, the magistrate judge characterized the evidence in support of the charges at the West 95th location as "overwhelming." (*Id.* at 6.)  The R&R recommends denying Kiriazis' petition because the Ohio appellate court's conclusion that any rational trier of fact could have found that Kiriazis operated a brothel out of both the West 25th and West 95th locations was not an unreasonable determination of the facts in light of the evidence.

### IV. DISCUSSION

The Court agrees with the magistrate judge's recommendation that Kiriazis' petition is without merit.  Kiriazis' "objections" to the R&R, restate, almost verbatim, the arguments he made in his *Traverse to Return of Writ*.  (Doc. 17; Doc. 10.)  With this in mind, the magistrate judge already addressed these arguments in the R&R, at least implicitly.  To the extent that the R&R does

6

not expressly address these arguments, however, the Court will address the objections here.

The heart of Kiriazis' objection is that the evidence the R&R characterizes as "overwhelming" primarily relates to the West 25th location, not the West 95th location. Kiriazis argues that the evidence was insufficient to establish the crime <u>for which he was indicted</u>, which he says is only the crime as described in the bill of particulars; *i.e.*, operating a brothel on West 95th street. He argues that "federal due process regarding sufficiency of evidence is violated when the evidence is insufficient to sustain the crime charged and properly before the jury at trial." (Doc. 10 at p. 5.)

As Kiriazis notes in his *Traverse* (*id.*), federal due process requires the state to follow its own procedural rules with respect to the sufficiency of evidence as it relates to an indictment. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In reviewing this *habeas* petition, however, the Court must accept as valid the state court interpretation of state laws and rules. *See Vroman*, 346 F.3d at 604. The question presented, accordingly, is whether the state appellate court's decision with respect to the due process requirement to follow its own procedural rules regarding indictments was contrary to established federal law or objectively unreasonable.

Count One of the indictment charges Kiriazis with promoting prostitution in violation of O.R.C. 2907.22 as follows:

> The Grand Jurors, on their oaths, further find that the Defendant(s) unlawfully knowingly did establish, maintain, operate, manage, supervise, control or have an interest in a brothel.

(Doc. 18, Indictment.) The bill of particulars listed West 95th street as the location of the brothel. (*Id.*, Bill of Particulars.) The state appellate court determined that the indictment was sufficient under applicable state law, even though the bill of particulars did not reference the West 25th street

7

location, and even though the evidence presented at trial related to both the West 25th street and West 95th street locations. *State v. Kiriazis*, No. 82887, 2004 WL 231478 at *2-4 (Ohio App. 8 Dist. Feb. 5 2004). The state appellate court reasoned as follows:

> {¶ 8} For his first assignment of error, appellant contends that there was insufficient evidence to sustain his conviction. In particular, appellant asserts that while the bill of particulars indicates that appellant's offense occurred on West 95th Street in Cleveland, the evidence sufficient to sustain his conviction presented by the state at trial concerned the West 25th location only. As argued by appellant, there was insufficient evidence to sustain his conviction because there was a discrepancy between the place of the offense indicated on the bill of particulars and the place of the offense presented at trial. This argument, however, lacks merit.
>
> {¶ 9} First, the purpose of a bill of particulars is to "particularize the conduct of the accused to constitute the charged offense." *State v. Sellards* (1985), 17 Ohio St.3d 169, 171, 478 N.E.2d 781. It is not the purpose of a bill of particulars "to provide the accused with specifications of evidence or to serve as a substitute for discovery." Id. Likewise, Crim.R. 33(E)(2) provides that a variance between the allegations and the evidence at trial is not reversible error unless the defense is prejudiced or misled thereby. On the record before us, we cannot conclude that the state's failure to list on the bill of particulars West 25th as also the location where appellant committed his offense constituted prejudicial error or otherwise misled appellant.
>
> *3 {¶ 10} The Supreme Court of Ohio held in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, that "sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." In reviewing the record for sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113, 1997-Ohio-355, 684 N.E.2d 668, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
>
> {¶ 11} Promoting prostitution, per R.C. 2907.22, provides as follows:
>
> {¶ 12} "(A) No person shall knowingly:
>
> {¶ 13} "(1) Establish, maintain, operate, manage, supervise, control, or have an interest in a brothel;
> . . .

{¶ 18} In addition, a "brothel," since it is undefined by statute, must be construed according to the rules of grammar and common usage. *State v. Poirier*, Lucas App. Nos. L-01-1479, L-01-1480, L-01-1481, 2002-Ohio-4218, citing *State v. Coburn* (1992), 84 Ohio App.3d 170, 173, 616 N.E.2d 567. "Brothel" is synonymous with the word "bordello," which is defined as "a building in which prostitutes are available." *Mirriam Webster's Collegiate Dictionary* (10 Ed.1996) 146.

{¶ 19} Possessing criminal tools, per R.C. 2923.24(A), provides as follows:

{¶ 20} "(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶ 21} Despite appellant's arguments to the contrary, the evidence presented at trial was more than sufficient to sustain appellant's conviction. Any rational trier of fact could have found that through the use of notebooks and a cell phone, appellant operated a brothel out of both the West 25th and West 95th locations. As testified by Graves and Hutchinson, appellant arranged customers to meet with females who charged $150 per hour for "full service," which meant oral sex or sexual intercourse. Appellant first arranged for Graves to meet him and a female at West 25th for sex. Although the purchase never materialized because the female suspected Thomas (filling in for Graves) to be a cop, the purchase materialized the following week when appellant arranged for Hutchinson to meet Tomazic at West 95th for sex. After Hutchinson charged Tomazic for soliciting prostitution, as well as charged Martin, also at West 95th, for prostitution after she admitted being a prostitute, he charged Lenz, a male exiting a nearby bedroom at West 95th, with drug possession. Hutchinson testified that he later learned that Lenz went to West 95th to get high and receive oral sex.

*4 {¶ 22} This evidence, coupled with Tomazic's testimony that she gives a $50 cut of the $150 to appellant for all sexual activities she performs with clients arranged by appellant and appellant's statement that he had been running the business for a few months, knew the females were having sex, and would receive a $50 cut for each meeting he arranged, could lead any rational trier of fact to conclude that the essential elements of promoting prostitution and possession of criminal tools were proven beyond a reasonable doubt.

Kiriazis challenges this decision by the Ohio court of appeals by citing *State v. Vitale*, 96 Ohio App. 3d 695 (1994). He argues under *Vitale* that his conviction violated his federal and state constitutional due process right "to be tried on the same essential facts on which the grand jury found probable cause." (Doc. 10 at p. 5 (citing *Vitale*, 96 Ohio App. 3d at 699.) In *Vitale*, the court held

9

that the trial court committed reversible error when it allowed the prosecution to amend the indictment with respect to the date the offense occurred. *Id.* The court noted that the amendment presented "a grave risk . . . that the defendant was convicted . . . of a felony that was not presented to the grand jury." *Id.* In response to the state's argument in *Vitale* that the amendment to the indictment did not prejudice the defendant, the court stated that prejudice is immaterial if the defendant was not convicted on the same evidence on which he was indicted. *Id*. at 701. Furthermore, the *Vitale* court stated that the government "should be restricted in its proof to the indictment and the particulars set forth in the bill." *Id.* (quoting *State v. Miller*, 63 Ohio App. 3d 479, 485-86 (Ohio App. Ct. 1989). Kiriazis argues that a careful reading of *Vitale* calls into question the legitimacy of the state court's interpretation of both Ohio and federal law regarding the adequacy of the indictment.

While Kiriazis' argument under *Vitale* is certainly not frivolous, the broad principles Kiriazis attempts to draw from *Vitale* have been rejected both by other Ohio courts and by the Sixth Circuit. Indeed, the Sixth Circuit recently addressed the question of whether a discrepancy between details in a bill of particulars and the evidence at trial is sufficient to sustain a *habeas* challenge to the sufficiency of the evidence. *Geboy v. Brigano*, 489 F.3d 752, 762 (6th Cir. 2007). In dismissing the petitioner's *habeas* claim on this point, the Sixth Circuit examined both Ohio and federal law and concluded that "it would appear unlikely that a discrepancy between a bill of particulars and the evidence at trial could sustain [a sufficiency] challenge." *Id*.

In *Geboy*, the *habeas* petitioner challenged the sufficiency of the evidence in support of his Ohio state-court conviction for felonious sexual penetration. *Id.* at 756-57. The victim was the petitioner's daughter, and the bill of particulars listed the family home as the specific location where

10

the offenses at issue occurred. *Id.* at 757. The evidence at trial pointed, however, to sexual activity at several locations other than the family home and actually did not include much evidence at all of such activity at the family home. *Id*. In his sufficiency of the evidence challenge, the petitioner argued that the bill of particulars should have limited the scope of evidence produced at trial to the family home. *Id.* The Sixth Circuit rejected this argument, reasoning as follows:

> (1) The indictment charging the petitioner with felonious sexual penetration does not identify or restrict the location where the charged offenses occurred (*id.*);
>
> (2) A specific location is not an element of felonious sexual penetration, the Ohio statute petitioner violated *(id.)*;
>
> (3) The bill of particulars *does* list a specific location where the charged offenses occurred, and witnesses testified at trial concerning conduct at other locations (*id.* at 759);
>
> (4) Under Ohio law, the state cannot amend an indictment, directly or through a bill of particulars, if the amendment requires proof of different elements (*id.* (citing *Vitale*));
>
> (5) The details in a bill of particulars typically do not qualify as elements of the offense charged in the indictment (*id.*);
>
> (6) Providing specific information that is not in the indictment and differs from the evidence at trial in a bill of particulars does not convert the specific information into an element that must be included in the indictment (*id.* at 763 (citing *State v. Webb*, 72 Ohio App. 3d 749 (1991));
>
> (7) Discrepancies between the bill of particulars and the evidence at trial is treated as a 'variance' when it does not change the identity of the offense, and the court must determine whether the petitioner was prejudiced by the variance (*id.*).

The Sixth Circuit in *Geboy* noted that the standard of review for a *habeas* due process challenge to the sufficiency of the evidence is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 Led.2d

11

560 (1979)." *Id*. at 762. The Court concluded that, because location was not an element of the offense at issue, and the variance did not prejudice the petitioner, his *habeas* challenge was meritless. *Id*. at 766.

Like the indictment in *Geboy*, Kiriazis' indictment does not list a specific location for the offenses charged. Under the reasoning in *Geboy*, in order to prevail on his *habeas* petition, Kiriazis must first establish that the specific location of the brothel is an element of promoting prostitution under sub-section (A)(1) of O.R.C. 2907.22. Ohio cases addressing O.R.C. 2907.22(A)(1) do not explicitly address this point. The Court has reviewed Ohio cases discussing O.R.C. 2907.22(A)(1) and found no authority for the proposition that an indictment for promoting prostitution under O.R.C. 2907.22(A)(1) must list the specific location of the brothel.[5] Applicable case law, as well as the plain language of the statute, thus does not indicate that the appellate court erred in implicitly determining that a specific location is **not** an element of O.R.C. 2907.22(A)(1).[6]

---

[5] Kiriazis cites *State v. Poirier*, Nos. L-01-1479, 1480, 1481, 2002 WL 1889590, at *3 (Ohio Ct. App. Aug. 16 2002), for the definition of 'brothel' as a "building in which prostitutes are available." He argues that the evidence was insufficient to establish that he had any control or interest in the building on West 95th street in which a prostitute with whom he communicated was available and that, thus, the government failed to present evidence of a "brothel" at that location. (Doc. 10 at p. 7.) Putting aside the question of whether Ohio law requires an ownership interest in, or control over, a particular site before it can be characterized as a "brothel" (which it does not appear to do), *Poirier* did not address the question of whether the specific location of the brothel in question is an element of O.R.C. 2907.22(A)(1). *Poirier*, 2002 WL 1889590 at *3. Instead, the defendant there was indicted under O.R.C. 2907.22(A)(1) and claimed that the statute was unconstitutionally vague and ambiguous because certain words, including "brothel," were not defined by the statute. *Id*. The court held that O.R.C. 2907.22(A)(1) is not unconstitutionally vague for failure to define the term "brothel." *Id*. To the extent that it is relevant at all, this holding suggests that the specific location of a brothel is not an element of O.R.C. 2907.22(A)(1).

[6] The location at which the offense at issue in *Geboy* could have occurred is clearly less fixed than the location of a brothel. Because of the absence of Ohio law

12

As the Sixth Circuit stated in *Geboy*, with respect to Kiriazis' sufficiency of the evidence challenge, "it matters only whether 'a rational trier of fact could have found the ***essential elements*** of the crime beyond a reasonable doubt.'" 489 F.3d at 763 (citing *Jackson*, 443 U.S. at 319) (emphasis in original). Given that location is not an element of operating a brothel under O.R.C. 2907.22(A)(1), the fact that the evidence at trial related to more than just the location mentioned in the bill of particulars is at most a variance from, rather than an amendment to, the indictment. *See Geboy*, 489 F.3d at 763 n.7. "[T]his discrepancy does not elevate the[] additional detail[] into [an] 'element[]' that must have been included in the indictment." *Id*. at 763 (citing *Webb*, 72 Ohio App. 3d at 752). For example, in *Webb*, the Ohio court of appeals held that the defendant's due process rights were not violated when the indictment charged receipt of stolen firearms and the bill of particulars listed the wrong serial numbers for the firearms at issue. *Webb*, 72 Ohio App. 3d at 751-52. The court reasoned that (1) only specific information as to essential elements must be revealed in a bill of particulars; (2) the guns' serial numbers are not essential elements of receiving stolen firearms; and (3) the defendant was not prejudiced by the discrepancy. *Id.* at 752.

Finally, under *Geboy*, Kiriazis must establish that he was prejudiced by any variance between the evidence at trial related to West 25th street and the reference to West 95th street in the bill of particulars. 489 F.3d at 764. A variance in proof is prejudicial only if it "affects the substantial rights of the accused." *Berger v. United States*, 295 U.S. 78, 82 (1935). The variance affects the defendant's substantial rights when he is prejudicially surprised or the fairness of his trial is prejudiced. *United States v. Miller*, 471 U.S. 130, 134-35 (1985).

The variance between the location of the brothel listed in the bill of particulars and the

---

indicating that location is an element of O.R.C. 2907.22(A)(1), however, the Court finds that this distinction is not controlling.

evidence at trial related to West 25th street did not prejudice Kiriazis. First, Kiriazis was arrested at the West 25th location and the notebooks and cell phone the police confiscated in connection with his arrest were found there as well. (*See* Doc. 13 at p. 21.) Therefore, he knew from the time of his arrest that the West 25th location would be a subject of testimony at his trial; he was not prejudicially surprised. Furthermore, he had an opportunity to cross-examine the three detectives who investigated him with respect to the charges and his conduct at both the West 25th and West 95th locations. (*See* Doc. 13 at pp. 37-49, 64-67, and 80-88.) There is no indication that the variance caused his trial to be prejudicially unfair.

Moreover, evidence was also produced at trial relating to both locations, and to the interrelationship between them. This fact supports the conclusion that Kiriazis was actually convicted of the very offense described in the bill of particulars, *i.e.*, operating a brothel at – among other locations – the West 95th street location. Although the evidence for that location may not have been truly "overwhelming," it was not unreasonable for the Ohio court of appeals to find that "[a]ny rational trier of fact could have found that, through the use of notebooks and a cell phone, appellant operated a brothel out of **both** the West 25th and West 95th locations." *Kiriazis*, 2004 WL 231478 at \*3 (emphasis added).

The state court's holding rejecting Kiriazis' sufficiency of the evidence challenge simply was not "contrary to" clearly established federal law. *Williams,* 529 U.S. at 412-413. Under the standard for *habeas* relief, *see id.*.at 409; *Wiggins*, 539 U.S at 528-29, the facts are sufficient to establish that Kiriazis operated a brothel at the West 95th and West 25th locations. The evidence, derived from the trial transcript, is accurately summarized in the R&R (Doc. 15 at p. 5-6; *see also, e.g.*, Doc. 13, Trial Transcript at pp. 69-90):

14

- An undercover detective telephoned Kiriazis, who arranged for the detective to meet a female, Ms. Jennine Tomazic, at the West 95th location for sexual activity.

- As arranged, the detective met Ms. Tomazic at the West 95th location. After being arrested as a result of her conduct at the meeting, Ms. Tomazic admitted that she is a prostitute and that she gave Kiriazis $50 for each client meeting he arranged for her.

- Kiriazis admitted to the detective that he had been running an escort service for a few months and made $50 each time he arranged a meeting. He also admitted that he knew the women were having sex at the arranged meetings.

- When Kiriazis was arrested at the West 25th location, the police found a cell phone and notebooks with females' body figures and phone numbers, callers' names and phone numbers, and a list of meeting dates and locations.

- The telephone numbers from which the officers called were listed in the notebooks found at the West 25th location, and were also recorded in the confiscated cell phone, corroborating the officers' testimony regarding their calls to Kiriazis to arrange a meeting with a female for "full service."  (*See generally* Trial Transcript at pp. 28-31, 71-78.)

In light of these facts, the state court's application of the law to the facts was not objectively unreasonable.  *See Williams*, 529 U.S. at 410. Likewise, its factual findings were not unreasonable given the "presumption of correctness" to which the finder-of-fact is entitled in the *habeas* context. *See* 28 U.S.C. § 2254(e)(1).

Kiriazis' objection to the magistrate judge's R&R is without merit.

15

V.      **CONCLUSION**

For the foregoing reasons, the Court agrees with the magistrate judge's conclusions in his R&R and finds that Kiriazis's objection thereto is not meritorious.  Therefore, the Court **ADOPTS the R&R** (Doc. 15).  Accordingly, Samuel Kiriazis's petition for a *writ of habeas corpus* pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and his case **DISMISSED.**

**IT IS SO ORDERED.**

                                                                s/Kathleen M. O'Malley
                                                                **KATHLEEN  McDONALD  O'MALLEY**
                                                                **UNITED STATES DISTRICT JUDGE**

**Dated:  December 10, 2007**